J-S29004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TAIVON JANAYE LUSTER, | |
| Appellant | No. 195 WDA 2015 |

Appeal from the Judgment of Sentence Entered December 4, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012910-2013

BEFORE: BENDER, P.J.E., PANELLA, J., and FITZGERALD, J.[*]

MEMORANDUM BY **BENDER, P.J.E.:**                **FILED JULY 19, 2016**

Appellant, Taivon Janaye Luster, appeals from the judgment of sentence of 11½-23 months' incarceration and a consecutive term of two years' probation, imposed following her convictions for cruelty to animals, simple assault, possession of marijuana, criminal mischief, and disorderly conduct. Appellant challenges the sufficiency of the evidence sustaining her conviction for simple assault. She also contends that the trial court's exclusion of certain evidence constituted an abuse of discretion. After careful review, we affirm.

The trial court summarized the evidence adduced at trial as follows:

> On August 31, 2013, at approximately 12:30 p.m., Rosalyn Reed was watering her outdoor plants and retrieving her

---

[*] Former Justice specially assigned to the Superior Court.

mail when her neighbor, [Appellant], appeared outside and began shouting at her. [Appellant] was screaming obscenities and was repeatedly threatening Ms. Reed. Ms. Reed ignored [Appellant] at first and continued to water her plants, but [Appellant] then told Ms. Reed that she was going to "fix her," and she reemerged with a "bucket of eggs" and an object that resembled a two-by-four. [Appellant] threw at least a dozen eggs at Ms. Reed's 2006 black Chevy Blazer, the eggs hitting the roof, front grille, hood, and windshield of the car, causing damage to the vehicle.

After she was finished throwing the eggs, [Appellant] picked up the two-by-four object and began threatening to hit Ms. Reed. With the two-by-four in her hand, [Appellant] stated "I got something for you," and "I'll fix you." As [Appellant] was threatening Ms. Reed, she was also walking towards Ms. Reed's vehicle and towards the front of Ms. Reed's hedges. Ms. Reed was "terrified," "shocked" and "scared," and she did not respond to [Appellant]. Although Ms. Reed was on her porch at this point, her 22[-]pound, ten-year old Miniature American Eskimo named Sake was tied up in her front yard, sitting directly behind the hedges.

Accordingly to Ms. Reed, [Appellant] could not get to her on the porch, so she went after her dog instead. [Appellant] moved toward Sake, found a gap in the hedges, reached over, and delivered a powerful blow to the dog's head with the wooden two-by-four object, swinging it like a baseball bat. Sake fell upon impact and immediately began to seize and spasm. [Appellant] ran back into her home with the wooden object, and Ms. Reed called the police. She also took photographs of Sake's injuries. Upon their arrival, the police officers immediately recognized that Sake had suffered "extensive injuries," and they encouraged Ms. Reed to seek medical treatment for Sake as soon as she finished accounting the details of the incident to the officers.

When the police officers went to [Appellant]'s home to obtain her version of events, [Appellant] came out of her residence, took a seat in a chair on her porch, and began to speak with them without any prompting. She confirmed that there had been an ongoing dispute between her and Ms. Reed and she admitted that she had hit Sake, Ms. Reed's dog. However, she claimed that she had used a purse or a bag instead of a hard wooden object. After [Appellant] denied to the

police that she had a two-by-four or similar object in her residence, she stood up, gestured towards her front door, and indicated to the officers that they could "go ahead and check." She moved towards the door and entered her residence alongside the officers.

Once inside of the home, the officers encountered another woman and two (2) small children between the ages of one and two years old. As they were searching for the object that was used to hit Sake, the officers observe, in plain view, a marijuana blunt, pipes, and two loaded firearms sitting next to each other on top of [Appellant]'s dresser in her bedroom. Neither weapon had its mechanical safety engaged. One firearm was registered to [Appellant]'s fiancé, but the other was unregistered. The officers never found an object resembling a two-by-four in the home, and [Appellant] was arrested shortly after the officers completed the background check on the firearms.

As a result of [Appellant]'s actions, Sake suffered severe head trauma, from which the veterinarians originally believed he would not survive. Against all odds, the dog survived, but is now substantially visually impaired following this incident. The dog continues to suffer from seizures and anxiety issues, which require permanent treatment and medications.

Trial Court Opinion (TCO), 7/29/15, at 4-7 (citations omitted).

On August 31, 2013, Appellant was charged by criminal information with the following ten counts: (1) endangering the welfare of children, 18 Pa.C.S. § 4304(a)(1); (2) endangering the welfare of children, 18 Pa.C.S. § 4304(a)(1); (3) person not to possess/use firearms, 18 Pa.C.S. § 6105(c)(7); (4) person not to possess/use firearms, 18 Pa.C.S. § 6105(c)(7); (5) cruelty to animals, 18 Pa.C.S. § 5511(a)(2.1)(i)(A); (6) simple assault, 18 Pa.C.S. § 2701(a)(3); (7) possession of marijuana, 35 P.S. § 780-113(a)(31); (8) possession of drug paraphernalia, 35 P.S. § 780-

113(a)(32); (9) criminal mischief, 18 Pa.C.S. § 3304(a)(1); and (10) disorderly conduct, 18 Pa.C.S. § 5503(a)(1).

Prior to trial, Appellant litigated an unsuccessful suppression motion, and counts 3 and 4 (the firearms charges) were severed from the criminal information at the Commonwealth's request. A jury trial was held regarding counts 1, 2, 5, 6, and 8. The jury found Appellant guilty of counts 5 and 6 (animal cruelty and simple assault), and not guilty of counts 1, 2, and 8. Immediately following the jury trial, Appellant proceeded to a bench trial on the remaining non-firearm counts, 7, 9, and 10 (possession of marijuana, criminal mischief, and disorderly conduct). The trial court found Appellant guilty of each of those charges. Ultimately, the Commonwealth *nolle prossed* both firearms charges. On December 14, 2014, the trial court sentenced Appellant to 11½-23 months' incarceration at count 5 (cruelty to animals), and a consecutive term of two years' probation at count 6 (simple assault). Pursuant to these offenses, Appellant was ordered to pay a $1000.00 fine and court costs. No further penalties were assessed at the remaining counts.

Appellant filed a timely post-sentence motion. Following a hearing addressing that motion on January 8, 2015, the trial court reduced Appellant's fine by $500.00. Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on April 30, 2015. The trial court issued its Rule 1925(a) opinion on July 29, 2015. Appellant now presents the following questions for our review:

- 4 -

I. DID THE TRIAL COURT ABUSE ITS DISCRETION BY LIMITING TESTIMONY REGARDING THE LONG-STANDING DISPUTE BETWEEN [APPELLANT] AND REED, WHICH WAS RELEVANT TO UNDERMINE REED'S CREDIBILITY AND ESTABLISH THE NATURE OF THE DISPUTE?

II. DID THE TRIAL COURT ABUSE ITS DISCRETION IN EXCLUDING DEFENSE PHOTOGRAPHS OF REED'S DOG OFF ITS LEASH, AS THE PHOTOGRAPHS WERE RELEVANT TO THE CREDIBILITY OF REED'S TESTIMONY AND THE NATURE OF THE LONG-STANDING DISPUTE BETWEEN REED AND [APPELLANT]?

III. WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN [APPELLANT]'S CONVICTION AT COUNT 6, SIMPLE ASSAULT, AS THE COMMONWEALTH FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT [APPELLANT] USED PHYSICAL MENACE OR THAT SHE PLACED REED IN FEAR OF IMMINENT SERIOUS BODILY INJURY?

Appellant's Brief, at 5.

Appellant's first two claims concern the trial court's exclusion of certain evidence.

It is well established in this Commonwealth that the decision to admit or to exclude evidence lies within the sound discretion of the trial court. Moreover, our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Robertson*, 874 A.2d 1200, 1209 (Pa. Super. 2005) (quotation marks omitted).

Furthermore, "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence;" and "(b) the

- 5 -

fact is of consequence in determining the action." Pa.R.E. 401. The comment to Rule 401 also directs that: "Whether evidence has a tendency to make a given fact more or less probable is to be determined by the court in the light of reason, experience, scientific principles and the other testimony offered in the case." Pa.R.E. 401 (comment). "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Appellant's first claim concerns the ostensible exclusion of testimonial evidence concerning the ongoing dispute between Appellant and Reed, which predated the incident in question. Appellant contends that this ongoing dispute "was highly probative of [Reed's] bias and, as a result, the credibility of her testimony." Appellant's Brief, at 17. The Commonwealth argues, however, that this claim is meritless because

> it is not at all clear that any specific evidence that [A]ppellant sought to present to the jury was precluded by the trial court, and if that is the case, [A]ppellant's claim fails on its face. Secondly, to the extent that [A]ppellant is claiming that the evidence was relevant to attack Reed's credibility, that claim is waived because [A]ppellant never offered that argument to the trial court as a basis for the evidence's admission.

Commonwealth's Brief, at 13. After a careful review of the record, we agree with the Commonwealth that Appellant has failed to specifically identify what evidence was excluded erroneously, testimonial or otherwise, regarding prior disputes between Appellant and Reed.

Prior to trial, the Commonwealth filed a motion *in limine* seeking to exclude evidence of prior disputes, claiming that the scope of admissible evidence should be limited to the events of August 31, 2013. Defense counsel opposed the motion as premature, arguing that his trial strategy would be dependent on the nature of the Commonwealth's evidence. N.T., 7/15/14, at 5. Defense counsel stated that he would likely need to delve into their prior disputes to some degree in order to establish that Appellant had a reasonable fear of Sake. *Id.* at 5-6. Consequently, defense counsel asked the trial court to "hold off on ruling on this particular motion until we see how this evidence comes in …." *Id.* at 6.

The trial court did not exclude any specific evidence in response to the motion *in limine*; instead, it appears to have merely cautioned defense counsel that the scope of permissible prior-dispute evidence would be narrow:

> The Court [addressing defense counsel]: You can have some leeway in discussing prior incidents, but I don't want a detailed discussion. You can talk about the fact there is a prior history. You can give a little bit about what that is, but we're not going back three years and we are not going back to every single incident that occurred.
>
> I'll give you some leeway on it, but we're not turning this into a neighbor fight. This is about this particular incident on this particular day. Understood[?]
>
> [Defense Counsel]: Yes.
>
> [Prosecutor]: Yes.

*Id.* at 11.

Appellant cites to several parts of the record where this matter came up again through the Commonwealth's objection to a question or line of inquiry pursued by defense counsel. However, in each instance, the record does not show that the court excluded any particular evidence. When defense counsel attempted to ask Reed if Appellant complained to her in the past about parking in front of their houses, the Commonwealth objected. Despite the trial court's statement that "[w]e're not getting into every dispute[,]" Reed immediately thereafter answered the question by denying any such disputes existed.[1]  *Id.* at 19.

Later, defense counsel asked Ms. Reed if she had ever "complained to the police that [[Appellant] and her family] have attached wires to [her] house to spy on [her]?"  *Id.* at 125.    The Commonwealth objected, and the trial court asked defense counsel for his response to the objection. Before any more was said, including any ruling by the court, Reed stated that she had only complained about garbage in the past. However, defense counsel was permitted to follow up extensively on Reed's answer.  *Id.* at 124-26.

_____

[1] Appellant argues that defense counsel was not permitted to ask follow up questions due to the trial court's ruling immediately preceding Reed's answer. The record does not reflect this; no effort was made by defense counsel to make the court aware that Reed's statement was impeachable, and Appellant does not identify what evidence could have been used for that purpose. Moreover, defense counsel did not ask the trial court to instruct the jury to disregard Reed's statement.

These are the only portions of the record identified by Appellant as demonstrating the exclusion of prior-dispute evidence. However, we agree with the Commonwealth that it is not apparent from the record what evidence was excluded, and Appellant fails to show otherwise. Thus, we conclude that Appellant's claim is meritless in this regard. Appellant does argue that certain police reports could have been admitted to rebut some of Reed's answers; however, Appellant does not identify where such evidence was actually offered by defense counsel and rejected by the trial court. Accordingly, this aspect of Appellant's claim is waived. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, we conclude that the trial court did not abuse its discretion by purportedly excluding evidence pertaining to prior disputes between Appellant and Reed.

Next, Appellant complains that the trial court abused its discretion when it excluded photographic evidence. Defense counsel attempted to admit, during Appellant's testimony, three photographs (Defense Exhibits E, F, and G) taken by Appellant, which purportedly depicted Sake off its leash. N.T., 7/15/14, at 188-189. Appellant admitted that the photographs were taken a year after the incident which gave rise to the charges in this case. *Id.* at 189. The Commonwealth objected to the relevance of the photos, and that objection was sustained by the trial court. *Id.*

Appellant now contends that this evidence was relevant because:

> [I]t made it less probable that Reed was telling the truth when she testified on direct examination that there was no ongoing dispute between her and [Appellant] regarding her dog. The ongoing dispute was … relevant to show the existence of animosity between the two women, which may have affected the veracity [of] Reed's testimony. Reed had specifically testified on cross-examination that there was no dispute of this nature because her dog was always under her control, rather than on [Appellant]'s property. By showing that Reed's dog was not, in fact, always "close by" her, the photographs would have cast doubt on Reed's claims that [Appellant] had never complained to her about the dog. … [P]roof of prior animosity between [Appellant] and Reed is relevant to establish Reed's bias and, accordingly, her motive to lie and/or embellish her testimony.

Appellant's Brief, at 30-31 (citations to the record omitted).

The trial court "sustained the [Commonwealth's] objection to [the admission of Defense Exhibits E, F, and G] because it agreed that the photographs were not taken during any relevant time frame." TCO, at 11. We agree with the trial court's basis for not admitting this evidence. As Appellant readily admits, she sought admission of these photographs in order to attack Reed's credibility, in the most general sense, by attacking her assertion that her dog was always under control: however, the photographs did not shed any light on the crimes for which Appellant was charged. Appellant does not even argue that the photographs demonstrate that Appellant was fearful of the 22-pound dog, ostensibly because the photos did not demonstrate any aggressive behavior on the dog's part. Moreover, the temporal discord between the incident and the photographs significantly diminished any nominal relevance such photographs could provide to Appellant's state of mind a year prior. Thus, we conclude that the

trial court did not abuse its discretion when it excluded Defense Exhibits E, F, and G.

Finally, Appellant argues the evidence was insufficient to convict her of simple assault. As is pertinent to Appellant's conviction in this case, a person commits a simple assault if he or she "attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa.C.S. § 2701(a)(3). Appellant avers that the Commonwealth failed to prove that she used "physical menace," or otherwise put Reed in "fear of imminent serious bodily injury." *Id.*

Our standard of review for sufficiency claims is well-established:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant argues that:

[T]he only evidence which the Commonwealth offered to support [Appellant]'s conviction under § 2701(a)(3) was the testimony that [she] made verbal threats, threw eggs at Reed's car, struck Reed's dog with a 2-by-4, and immediately ran back to her

house. Under Pennsylvania law, this evidence is not sufficient to establish simple assault by physical menace.

Appellant's Brief, at 35.

The trial court relied on the following facts in rejecting Appellant's sufficiency claim:

> [Appellant] repeatedly threatened Ms. Reed and told her that she was going to "fix her" and that she "had something for" her as she walked from her residence to the front of Ms. Reed's hedges. [Appellant] was screaming obscenities and throwing eggs at her vehicle, and [Appellant] threatened to hit Ms. Reed as she was holding a 2-by-4 object in her hands. Ms. Reed testified that she was "scared," "terrified" and "shocked" at [Appellant]'s behavior. Commonwealth witness Eugene Ziegler substantially corroborated Ms. Reed's account of the incident, as he saw [Appellant] throwing eggs at a vehicle, as well as [Appellant] holding a "big stick." Mr. Ziegler also testified that Ms. Reed looked scared during the incident.

TCO, at 22-23.

Appellant emphasizes that her threats were verbal, not physical in nature, as she never came within striking distance of Reed. Even still, Appellant argues, "physically threatening behavior is not enough to satisfy the requirements of § 2701(a)(3). Specifically, the statute requires that the defendant's behavior be calculated to cause fear of 'imminent' serious bodily injury." Appellant's Brief, at 36. Thus, Appellant contends that if the feared serious bodily injury is not imminent, the actions provoking that fear do not constitute a simple assault under subsection (a)(3).

Appellant relies **Commonwealth v. Fry**, 491 A.2d 843 (Pa. Super. 1985), in support of her claim. In **Fry**, the appellant was convicted under

the same provision of the simple assault statute as is at issue here under the following facts:

> On March 11, 1983, a ten year old female child was walking to school with a younger brother and two friends. When she reached the school grounds, Eric Fry, age eighteen, approached her from behind, grabbed her by putting his arms around her and lifted her off the ground. When she started to kick and scream, Fry said, "shut up, you're coming with me." The child had not been acquainted previously with Fry. Two children who were serving as safety patrol members saw what was happening and ran toward Fry; whereupon, he put the child down and walked away. At trial, the child surmised that Fry intended to pull her toward a flight of stairs leading to a locker room, but she conceded that she wasn't certain about that.

*Id.* at 844.

Addressing Fry's sufficiency claim challenging whether he intended to put the victim in fear of imminent serious bodily injury, we noted that "[p]roof of a person's state of mind may be found from his words or conduct or from the surrounding circumstances. Intent may be shown by circumstantial evidence. A fact finder may find that a person intends the natural and probable consequences of his actions." *Id.* at 845 (citations omitted). Nevertheless, this Court reversed Fry's conviction for simple assault, reasoning:

> [T]he only evidence of physical menace was that Fry put his arms around the child and picked her up. He did not strike or attempt to subdue her by physical means. He did not threaten to inflict bodily injury upon her. There was no evidence that serious bodily injury was imminent or that [Fry] intended to put the child in fear thereof. *Cf. Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978) (blow to nose not serious bodily injury); *In the Interest of J.L.*, [475 A.2d 156 (1984)] (pushing two year old child away with elbow insufficient to show

- 13 -

intent to cause bodily injury); ***Commonwealth v. Ostolaza***, 267 Pa.Super. 451, 406 A.2d 1128 (1979) (physically wrestling wallet from victim insufficient to show intent to put victim in fear of serious bodily injury).

The evidence did show that [Fry] told the child to "shut up" and that he was taking her with him. The child speculated that perhaps [Fry] intended to take her toward the steps leading to the locker room. Certainly one can infer from this that a young child would be alarmed and frightened by [Fry]'s conduct. However, that is not the conduct which was made criminal by 18 Pa.C.S. § 2701(a)(3). The statute required a specific intent on the part of [Fry] to put the child in fear of imminent serious bodily injury. This the Commonwealth failed to prove. There was no evidence from which it could be inferred that [Fry], by his conduct, intended to put the child in fear of imminent, serious bodily injury. The intent with which [Fry] acted has not been shown by the evidence, and it would be inappropriate for us to indulge in speculation with respect thereto.

***Fry***, 491 A.2d at 845.

We find the instant case easily distinguishable from Fry. The evidence here, taken in a light most favorable to the Commonwealth, established that Appellant was wielding a two-by-four (effectively a club) while threatening that she was going to "fix" Reed and that she "had something for" her.[2] Those threats were aggravated by Appellant's contemporaneous use of that weapon on Ms. Reed's leashed dog. Moreover, Reed testified that she was terrified of Appellant in that moment, and it is reasonable to believe that a two-by-four could inflict serious bodily injury. By contrast, in ***Fry***, there was no weapon involved, no threats of physical violence, no brutal attack on a

_____

[2] Taken in a light most favorable to the Commonwealth, these statements could reasonably be interpreted as threats of physical violence.

domestic animal, and no evidence of the victim's fear of serious bodily injury. Thus, **Fry** is inapposite.

In support of her claim, Appellant also distinguishes her case from that of **Commonwealth v. Hudgens**, 582 A.2d 1352 (Pa. Super. 1990), where this Court affirmed a conviction pursuant to 18 Pa.C.S. § 2701(a)(3), under the following facts:

> On April 26, 1989, appellant, Dennis Hudgens, and some friends visited the Space Station Video Game Arcade located near the intersection of Campbell and West Edwin Streets in Williamsport, Pennsylvania. One of the members in Hudgens' group was Joey Lebert, who was approximately thirteen years of age at this time. Lebert was dressed in a Ninja-type of costume on this occasion. A group of teenagers, who were approximately fifteen to eighteen years of age, were also present in the arcade. Some of the teenagers began to tease and harass Lebert with regard to his Ninja costume. As a result, Lebert left the arcade. The teenagers followed Lebert outside the arcade and continued their teasing. Lebert then observed the teens moving closer to him and he began to fear for his safety. In order to avoid a confrontation with the group, Lebert ran into a nearby alley.
>
> [Hudgens] subsequently became aware of the difficulties which Lebert encountered with the group of teens. Consequently, he exited the arcade and asked one member of the group, Clyde Swope, whether he was responsible for harassing or teasing Lebert. Swope denied making any comments to the boy. Hudgens disbelieved Swope and continued to exchange words with him. A heated argument ensued, during which Hudgens informed Swope that he was going to get him. In support of his threat, Hudgens then removed a sword which was concealed in his trousers. The sword resembled the type of weapon used by Samurai or Ninja warriors. Hudgens menaced Swope with the sword by holding it within five to six inches of Swope's body and by touching Swope's hand with the sword. Upon seeing the sword, Swope became frightened and attempted to back away from Hudgens. One of Swope's friends, Shalamar/Casper Brown, then entered the melee in order to protect Swope from possible harm. At this

point, Brown and Hudgens argued, until Hudgens sheathed his sword and walked away, with another of his friends, Forrest Mull.

*Id.* at 1354-55 (footnotes omitted).

We rejected Hudgens' sufficiency challenge that "the victim was not placed in fear of imminent serious bodily injury because Swope did not testify that [Hudgens] attempted to strike him with the sword or that [Hudgens] held the sword in a striking position[,]" because:

> At trial, Swope testified that [Hudgens] threatened that he would get Swope. Swope further indicated that [Hudgens] menaced him with the sword by holding it within five to six inches away from Swope's hand and by touching Swope's hand with the sword. In addition, the victim testified that he was afraid that [Hudgens] would stick him with the sword. Forrest Mull corroborated this aspect of Swope's testimony and admitted that Swope seemed scared or frightened of [Hudgens]. Swope's observation of the events was also supported by the testimony of Delores Mayer, who observed the fight as she was driving by the arcade. Mayer stated that she saw "a person with a sword or a saber aggressively approaching another man who was backing off and stepping off the curb[."] Mayer further testified that from her vantage point, [Hudgens] appeared to be more hostile and aggressive than the victim, who attempted to back away from the fight.
>
> Although [Hudgens] acknowledges this testimony, he cites *Commonwealth v. Fry*, 341 Pa.Super. 333, 491 A.2d 843 (1985) for the proposition that a mere touch is insufficient to sustain a conviction for simple assault. We find the type of conduct at issue in *Fry* to be significantly different from [Hudgens'] conduct in this case. In *Fry*, the defendant grabbed a ten year old girl by putting his arms around her and lifting her off of the ground. The child attempted to resist her attempted abduction by kicking and screaming. Fortunately for the child, her actions attracted the attention of safety patrol members who ran to assist her. Upon seeing the patrol members, Fry released the child. On appeal, this court found the evidence of simple assault under § 2701(a)(3) to be insufficient because the defendant did not threaten the child with physical harm, and did

- 16 -

not strike the child or use any other physical means to subdue the child. **Fry**, 341 Pa.Super. at 336–338, 491 A.2d at 845.

Unlike the defendant in **Fry**, [Hudgens] verbally threatened that he would get the victim. Further, [Hudgens] supported his ability to carry out the threat by wielding a sword in close proximity to the victim's body. Also, several witnesses to the incident testified that the victim was visibly frightened by [Hudgens]. Because this type of conduct was absent in **Fry**, we find it to be factually distinguishable from the situation presented in this case. Therefore, after careful review of the testimony presented at trial, we hold that there was ample evidence to sustain [Hudgens'] conviction for simple assault.

**Hudgens**, 582 A.2d at 1356-57 (citations to the record omitted).

Here, Appellant contends that, unlike in **Hudgens** where Hudgens had held his sword within inches of the victim, Appellant was comparatively distant from Reed. Therefore, Appellant argues that there was not legitimate "fear of imminent injury, rather than simply fear of future injury generally." Appellant's Brief, at 37.

The Commonwealth concedes that Appellant was not as close to Reed as Hudgens was to his victim. Commonwealth's Brief, at 30. However, the Commonwealth argues that, while proximity of assailant and victim distinguishes the instant matter from **Hudgens**,

there is one thing that [A]ppellant in the instant matter did that supported an intent to carry out her threats that was even more menacing than the actions of the defendant in **Hudgens**: She smashed the victim's dog in the head with the very weapon that she was using to threaten the victim. The Commonwealth would respectfully submit that this action, in conjunction with the threatening language and the fact that Reed was obviously afraid, certainly allowed the jury to conclude that [A]ppellant had attempted to put Reed in fear of imminent serious bodily injury by physical menace.

*Id.* at 30-31.

We agree with the Commonwealth that this fact had no comparable analog in **Hudgens**. Moreover, Appellant was not so distant from Reed that a fear of imminent harm was necessarily unreasonable. If Appellant was close enough to hit Reed's car with eggs and to bludgeon Reed's dog, she was close enough to put Reed in reasonable fear of imminent serious bodily injury, absent irrefutable evidence of impossibility. Accordingly, we find that Appellant's distinguishing of **Hudgens** fails to support her sufficiency claim.

For the reasons set forth above, we conclude that Appellant's sufficiency claim lacks merit. When viewed in light most favorable to the Commonwealth, the evidence adduced at trial was sufficient for the jury to conclude that Appellant attempted, by physical menace, to put Reed in fear of imminent serious bodily injury.

Judgment of sentence *affirmed*.

Judge Panella joins this memorandum.

Justice Fitzgerald files a dissenting statement.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2016